FRANK T. MAHER

VS

N. O. GAS LIGHT CO.,
    Appellant.

 No. 7873.

December 20th, 1920.

135

FRANK T. MAHER

VS

No. 7873.

N. O. GAS LIGHT CO.,
        Appellant.

Appeal from Civil District Court, Hon. Fred.D. King, Judge.

CHARLES F.CLAIBORNE, JUDGE .

This is a damage suit for injury received by plaintiff upon the premises of defendant.

The plaintiff alleged that on January 14th, 1919 at nearly one o'clock in the morning he was in the employ of the Illinois Railroad Company as switchman; that in said capacity he had occasion to be on top of a freight car belonging to said Railroad, when the car was pulled into the yard of the defendant Company for the purpose of delivering to said company three tank cars and six box cars, over a strip of track which was constantly used by railroad trains to the knowledge and invitation of the defendant and for its benefit; that while on the top of said car, his head came in contact with a pipe belonging to the defendant Company, extending over and across the track and connecting two buildings belonging to the defendant; that this occurred because there was not sufficient clearing space between the top of the car and the pipe to allow the passing of the car with the plaintiff on top of it without coming in contact with the pipe; that the night was foggy and plaintiff could not see the pipe; that his head struck the pipe, and he was knocked off the car, and thrown to the ground; that thereby he suffered injuries for which he claims $500.

The defendant pleaded a general denial. Further answering it averred that it was informed that a brakeman while riding on the top of a freight car then being for respondent into a shed used by it, came in contact with iron pipes used by respondent in the operation of its plant; that said pipes had been placed after a conference with the officials of the Illinois Railroad, and were placed at such height as to afford

136

ample clearance for any one riding upon the top of the freight cars used by the said Illinois Railroad at that time; but that defendant believes that the car upon which the plaintiff was riding was higher than the car which had been theretofore used, and the defendant had no intimation of the use by said Railroad of cars of different dimensions, and did not know that the clearance between the cars and the pipes had been lessened, nor could it reasonably foresee that there was any danger to be apprehended from the pipes located as they were; that the plaintiff had many times before ridden upon the top of freight cars being placed in said shed and knew the location of the pipes and the danger of coming in contact with them; that the cause of plaintiff coming in contact with the pipe was his own careless and negligent conduct in failing to keep a lookout for the pipes, the location of which he knew, and for his failure to take such precautions as were made necessary by the circumstances to avoid injury to himself.

There was judgment for plaintiff for $400 and the defendant has appealed.

There is no dispute about the amount of the judgment; the defendant admits that it is reasonable if plaintiff is entitled to judgment.

The plaintiff testifies that in January 1919 he was switchman for the Illinois Railroad; that on January 14th, at 12:45 A. M., he was placing cars for the New Orleans Gas Light Company, in the yard, that he was standing up on top of the car passing signs with a lantern to the head man; that in the performance of his duty he must stand up so as to see the engineer; that the night was foggy; he did not realize that he was so near to the pipe and he was hit by it; he is 25 years old; he had been a switchman three years and three months; he had frequently placed cars for the Gas Company; the car he was riding on was bigger than an ordinary box car; it was a furniture car; he had placed many of these large furniture cars; he knew the pipes were there, had passed under them about 25 times; there was a new man on top of the car with him; he told him to sit down in order to avoid coming

137

in contact with the pipe; he could not sit down, because if he did, the engineer could not see him and he would come to a stop; it was necessary for him to be on top of the car to do the signalling; he did not observe the pipe on that occasion, because he could not see ahead of him; he is expected besides to look out for wagons ahead and to stop the engine if there is one; after his accident the pipe was raised four feet.

George Aikman sworn for the defendant says: he was foreman in charge of the yards of the Gas Company at the time of the accident; he was employed by the Gas Company, and was checking up the cars; the night was clear to his knowledge; he did not see the accident; the car on which the plaintiff was, was a very large car called a furniture car, larger than the ordinary cars; on many prior occasions cars of the same size went into the yard of the Gas Company; he cannot say the night was foggy; possibly from the heat around the gas works it may be clear by the plant; he did not take particular notice whether it was foggy.

Another witness on behalf of defendant was examined; he is the private secretary of the manager; he made an examination of the premises where the accident occurred; the pipes were about 25 feet from the ground, judging by the eye; a freight car is about 15 or 16 feet high; the plaintiff is 5 feet, 8 inches; a furniture car is 16 feet high; he never measured a car nor the pipe; he does not know of his own knowledge whether the pipe was moved after the accident; he heard some talk about it; he cannot explain how it is that the car being 16 feet high, and the plaintiff 5 feet, 8 inches, making 21 feet, 8 inches high, the plaintiff's head struck the pipe that was 25 feet high.

Defendant's answer that the car on which the accident occurred was

> "higher than the cars which had been theretofore used, and it had no intimation of the use by said Railroad of cars of different dimensions"

is completely overcome by the testimony of their own witness, Aikman, who says that

> "on many prior occasions cars of the same size (furniture

138

cars) went into the yard of the Gas Company".

The only question presented by the defense therefore are 1o Is the defendant liable for the injury resulting from the location of the pipe, and 2o can the plaintiff recover notwithstanding his previous knowledge of the dangerous location of the pipe?

1o It must be remembered that the plaintiff was neither a trespasser nor a licensee in defendant's yard. He was there by invitation of the defendant in the performance of a duty for his benefit. An owner of premises guarantees persons invited by him thereon against avoidable perils caused by animals, traps, excavations, or other faulty distribution of the premises. The rule is thus broadly laid down by Thompson, Vol 1 p 890 § 968: ⸺

> "On the contrary, the owner or occupier of real property is under the duty of exercising reasonable or ordinary care and prudence to the end of keeping his premises safe for the benefit of those who come upon them by his invitation, express or implied; and if, through a neglect of this duty, they are, without negligence or fault of their own, injured by reason of any negligent defect therein, he must pay damages". § 1239. ⸺

The rule in 29 Cyc, 453 is stated as follows:

> "The owner or occupant of premises who induces others to come upon it by invitation, express or implied, owes to them the duty of using reasonable or ordinary care to keep the premises in a safe and suitable condition, so that they will not be unnecessarily or unreasonably exposed to danger". 46 A., 1180; 48 A., 487; 49 A., 86, 1264.

page 456:

> "An employee who goes to deliver goods to the owners of the premises is there by implied invitation".

> "A coal company into whose yard a railway track is built so as to permit of the unloading of coal cars in the yard is bound in piling the coal beside the track to use such care as an ordinarily prudent person would have exercised to avoid injury to employees of the rail-

139

way company running cars into the yard". 37 S. W.,359.

"The owners of property adjoining a railroad, who construct a side-track, so as to have cars set in to and removed from their premises, cannot construct anything thereon, for their own convenience, which may injure the employees of the company, using ordinary care, while setting in or removing cars". 8 Ohio S.& C. Pl. Dec. 283.

A telegraph company is liable for wires placed so low as to injure firemen. 41 A., 1041; 1 Thompson § 1238. ─

2o Protection of persons invited by the owner upon his premises is the duty imposed _upon him_ by the law; it cannot be evaded by answering that the party injured was aware of the danger; otherwise both the protection and the duty would cease; the party invited would be the innocent victim of his forgetfulness and the owner would escape responsibility for his guilty negligence. The party who has caused the injury must suffer the loss. This question has been the subject of much difference of opinion. But the Supreme Court of our State has indicated its views by marshalling a long line of decisions in the case of Erslew vs R.Rd., 49 A., 86. Many authorities are quoted sustaining the view that knowledge of danger precludes recovery. But it also mentions opinions taking an opposite view. It says:

"In the recent case of Simonds vs City, 67 N. W., 40, the Wisconsin Court Said: "Beach lays down the rule (Section 12) in effect, that where one knows the danger, but temporarily forgets it, and in consequence suffers an injury, his forgetfulness will not avail him as an excuse; that what he knows he must remember at his peril; and that a failure to remember constitutes contributory negligence if it occasion injury". But this opinion is not supported by reputable authorities anywhere, and has been expressly repudiated by this Court". The doctrine announced by Mr. Beach is mainly grounded on an opinion of the Massachusetts Court in Gilman vs Inhabitants of Durfield, 13 Gray, 577, but the Wisconsin Court said in Wheeler vs Westport, Supra, that that

140

Court had "carried the doctrine of forgetfulness" too far. And the Court proceeded to say in the Simonds case : "in fact the rule of Gilman vs Inhabitants of Durfield has been so fenced in by subsequent decisions as to be practically overruled, citing four subsequent cases from Massachusetts, five cases from New York, two cases from Wisconsin, and one from Missouri".

In Gusman vs Caffery, 49 A., 1264 (1270), the Court said:

"While defendant's proposition is that "it is not negligence in a railroad company to construct or permit to be constructed overhanging bridges etc., over its tracks so low as not to permit a brakeman to stand upright on the top of the box car" might be true in some special case under exceptional circumstances, it is certainly not true as a general proposition. On the other hand, were it true that if a brakeman knew or was presumed to know of the existence of suchaconstruction, he would be held, as a general rule, to have assumed the risk therefrom; it is not true that the mere fact of such knowledge carries with it necessarily and on all occasions, and under all circumstances, the cutting off of remedy for injuries received by him from such construction" Also 141 La., 493; 4 Thompson §4747 p 773; § 4752, 4753: and White's Supplement Vol.8 p 698.

We prefer to adopt the views expressed in the last opinions, as being more consonant with the general duties of owners of property and the rights of parties invited, whatever may be the law in relation to licenses and trespassers. We therefore hold that the plaintiff is entitled to judgment even if he knew of the dangerous position of the pipes and momentarily forgot to avoid them. His lack of memory did not relieve the owner of his duty towards him. The position of the pipe in that particular place was not essential to its use; its position was dangerous, and constituted negligence on the part of the defendant for which it must pay the plaintiff.

Judgment affirmed.

December 20th, 1920.